IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CULVER EDUCATIONAL FOUNDATION, an Indiana not-for-profit Corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 05 C 6480<br>) |
| v. | ) Judge Virginia M. Kendall<br>) |
| C. DANIEL BLYTHE, MICHAEL X. CRONIN, JOHN M. TIERNAN, FRANK A. TROIKE, RICHARD UGOLINI, individually and as Trustees of the James R. Lowenstine Trust Dated August 17, 1981 and the CONSERVE SCHOOL TRUST thereunder, RUSH UNIVERSITY MEDICAL CENTER, an Illinois not-for-profit corporation, doing business as RUSH MEDICAL COLLEGE of RUSH UNIVERSITY, and the CONSERVE SCHOOL CORPORATION, a Wisconsin not-for-profit corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Culver Educational Foundation ("Culver"), brought suit for breach of fiduciary duty against five individuals, both personally and in their capacity as trustees of a testamentary trust (the "Trustees"), and against the Conserve School Corporation.[1] The Trustees and the Conserve School Corporation (together the "Defendants"), moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Because Culver has pled sufficient facts to refute the probate exception to federal jurisdiction, the Court denies the motion.

---

[1] Culver included Rush University Medical Center and Rush Medical College (together "Rush") as additional defendants. The instant motion does not involve Rush. If Culver obtains the relief they seek from Defendants, Culver indicates in its Complaint that it would then commence action against Rush, a contingent beneficiary of the trust at issue in the case.

## Legal Standard for a Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter at issue. The party seeking to bring suit in a federal forum bears the burden of establishing federal subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all well-pleaded factual allegations in the complaint as true, and draws all reasonable inferences from those allegations in favor of the plaintiff. *Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003).

## Allegations of the Complaint

According to the Complaint, James R. Lowenstine established the James R. Lowenstine Trust (the "Trust") during his lifetime, and executed a Second Restatement of the Trust (the "Trust Instrument") a few months prior to his death. Complaint at ¶ 10. Mr. Lowenstine was a resident of Illinois at the time of his death. *Id.* at ¶ 11. The Trust's primary asset is a collection of stock comprising a controlling interest in the Central Steel and Wire Company ("Central Steel"), a Delaware Corporation with its principal place of business in Chicago, Illinois. *Id.* at ¶ 13. The Trust Instrument states that so long as the Trust owns the controlling interest in Central Steel, the individual directors of Central Steel automatically will be the individual trustees of the Trust. *Id.* at ¶ 15 - 16. The Trustees have been the directors (and the Trustees) since Mr. Lowenstine's death. *Id.* at ¶ 16.

The Trust Instrument provided for individual distributions to certain individuals upon Mr. Lowenstine's death, and directed the Trustees to place the remainder of Mr. Lowenstine's assets in a separate trust known as the Conserve School Trust, also administered by the Trustees. *Id.* at ¶ 19-

20. If certain conditions were met, the Conserve School Trust income and principal would be used to establish and operate a private school in northern Wisconsin named the Conserve School (the "School"). *Id.* If the conditions set forth in the Trust Instrument were not met, then subject to certain other conditions, the Trust Instrument directed the Trustees to sell the Central Steel Stock, and distribute the principal of the Conserve School Trust in part to Rush, and in part to Culver. *Id.* at ¶ 21-22.

The Trust Instrument directed the Trustees that the Conserve School should not be established "if for any . . . reason the trustees determine at any time that it is legally impossible or otherwise impractical to operate the Conserve School. . ." *Id.* at ¶ 23.[2] The Trust Instrument also directed the Individuals not to expend the principal of the Conserve School Trust until making determinations that the earnings of the Conserve School Trust, along with other sources of income, would be sufficient to maintain and operate the School. *Id.* at ¶ 24. The Trustees built the school and opened it for classes in September 2002. *Id.* at ¶ 30.

Culver alleges that the Individual Trustees breached their fiduciary duty in three respects. First, the Trustees allegedly failed to examine the feasibility of the School prior to building it, or determine whether the income from the Trust would be sufficient to maintain and operate the School in the future. *Id.* at ¶¶ 25-26. Second, the Trustees allegedly breached their fiduciary duty by funding the ongoing operations of the School with distributions from the principal of the Conserve School Trust, in violation of the terms of the Trust Instrument. *Id.* at ¶ 31-32. Third, Culver alleges that

---

[2]Culver attached the Trust Instrument as Exhibit A to the Complaint. The Court assumes that Culver refers to Paragraph M of Article VI, the source of the quoted language, rather than Article IV as stated in the Complaint. *See* Complaint at ¶¶ 23-26.

because the Trustees breached their fiduciary duty by failing to sell the shares of Central Steel, the value of Conserve School Trust deteriorated after Mr. Lowenstine's death. *Id.* at ¶ 47.

Culver alleges that it has been damaged by these breaches because it is the contingent beneficiary of the Conserve School Trust. The Trust Instrument directed the Trustees to sell the shares of Central Steel and distribute principal of the Conserve School Trust to Culver once it became clear that the School could not operate without invading the principal of the Conserve School Trust. *Id.* at ¶¶ 33-35. By failing to follow these instructions, and by failing to sell the Central Steel shares as would a prudent investor, the Conserve School Trust principal has deteriorated. Culver seeks both damages from the Trustees and specific performance of the terms of the Trust Instrument, whereby Culver would receive the distribution of the Conserve School Trust.

## Discussion

Defendants move to dismiss the Complaint on two grounds.[3] First, Defendants claim that the controversy is covered by the "probate exception" to federal jurisdiction. Second, Defendants suggest as an alternative that the Court should abstain from hearing the case in deference to the state courts of Illinois. Because the Court does not find that this case falls within the probate exception, and because there is no ongoing proceeding from which the Court should abstain, Defendants' motion is denied.[4]

---

[3] Culver has satisfied its initial burden to proceed in Court on grounds of diversity. 28 U.S.C. §1332(a). Culver is a foundation based in the state of Indiana, the Conserve School Corporation is based in Wisconsin, and the Trustees are located in Illinois. The assets of the Conserve School Trust are agreed to be well in excess of the $75,000 threshold for federal diversity jurisdiction. Complaint at ¶¶ 7-8, 31; Def. Mot. Dismiss at 2.

[4] The United States Supreme Court presently is reviewing a case concerning the scope of the probate exception, *Marshall v. Marshall*, 392 F.3d 1119 (9th Cir. 2004). Because *Marshall* came before the Supreme Court in the context of federal question jurisdiction provided by the Bankruptcy Code, the result in *Marshall* should not affect the Court's ruling in this case.

4

*The Probate Exception*

A federal court "has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 298 (1946). Under the holding of *Markham*, known as the "probate exception," even a case that meets the requirements of diversity jurisdiction cannot be heard by the federal courts if it is a probate matter. *Storm*, 328 F.3d at 943. The precise contours of the exception have not been well-defined; the exception applies easily to "pure" probate matters, such as the administration of an estate governed by a will, but becomes increasingly difficult to apply to matters that may be "ancillary" to probate. *Id.* The probate exception should be construed narrowly, as it is a judicially created exception to the statutory grant of federal diversity jurisdiction. *Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988).

The parties agree on three facts relevant to the issue of jurisdiction: (i) the Trust has been probated by the Illinois state courts; (ii) the probate proceedings in Illinois state court have closed; and (iii) the Trust Instrument is a validly probated document. Beyond this, however, agreement between the parties ends. Culver argues that the legal issue before the Court is solely one of breach of fiduciary duty, and therefore completely outside the probate exception. Defendants contend that the scope of the Trustee's duties and authority under the Trust Instrument cannot be interpreted without evidence of Mr. Lowenstine's intent, making the Trust Instrument "ancillary" to probate and within the probate exception. Therefore, this dispute turns on the extent to which an action to enforce an agreement may be "ancillary" to a probate proceeding justifying the exercise of the probate exception.

In evaluating whether an instrument should fall within the "ancillary" portion of the probate exception, the court has an "invitation to apply a concept - here the concept of probate -

5

pragmatically."[5] *Dragan v. Miller*, 679 F.2d 712, 715 (7th Cir. 1982). There are four general practical reasons behind the probate exception: 1) to encourage legal certainty, by ensuring consistent outcomes of probate disputes; 2) to promote judicial economy; 3) to promote "relative expertness" in specialized legal matters such as probate; and 4) to avoid unnecessary interference with the state system. *Storm*, 328 F.3d at 944. Weighing the pleadings of both parties in this case, the Court concludes that the practical considerations for the probate exception do not apply to this matter.

First, a decision by the Court in this case will not discourage legal certainty or run counter to principles of judicial economy. The state court probate case in Cook County Circuit Court closed in 1999, and has not been reopened. Therefore, the Court does not face the possibility that a ruling from a federal court may contradict a ruling in a concurrent state court case covering the same issues, or that the federal proceeding will waste judicial resources by allowing concurrent suits on the same issues.

Second, the Court is not concerned about the "relative expertness" of the state courts in this particular matter. If this case were to be remanded to state court, it would be heard in the Cook County chancery division, rather than in the probate division. Def. Mot. Dismiss at 11. The Court agrees with Culver that this fact weighs in favor of federal diversity jurisdiction. If the state courts would refer this matter to a court of general jurisdiction rather than a specialized probate division, then there is minimal concern that the Court will "interfere with a state policy of channeling all probate-related matters to specialized courts." *Hamilton v. Nielsen*, 678 F.2d 709, 710 (7th Cir.

---

[5]Prior courts have examined trusts as "will substitutes" for purposes of the probate exception, and have applied the same practical factor-analysis to trusts. *See Storm*, 328 F.3d at 947. However, there is no *per se* rule that trusts are always will substitutes. *Georges*, 856 F.2d at 974 n.2 (finding equivalence in the case before it and applying the practical factors).

1982) (asserting federal jurisdiction over a case against an executors/trustees for negligent investment decisions). While Defendants are correct that chancery courts may hear trust claims more frequently than federal courts, the federal courts are competent to apply Illinois law to trust matters, and do so in trust cases brought in diversity.

Defendants allege as the main thrust of their argument in favor of the probate exception that in order to review the Trust Instrument, the Court will be required to examine the intent of Mr. Lowenstine, bringing the case into the realm of probate-like decisions traditionally handled by state courts. Drawing reasonable inferences in favor of Culver, however, this case bears more similarity with a breach of fiduciary duty in contract or business than it does with a probate matter such as undue influence. Taking Culver's well-pled facts as true, the Court will not be required to delve deeply into testamentary intent in this matter, because Culver bases its allegation on the language of the instrument itself and seeks a remedy provided within the terms of the validly probated document.

Culver concedes that the Trust Instrument is valid and binding, and pleads relief that may be afforded by the terms of the Trust Instrument itself and by monetary damages. "Where the plaintiff admits the will's validity and merely asserts a right to share in the distribution of the estate, the federal court can decide the suit before it without any direct impact on the state's probate of the will." *Rice v. Rice Foundation*, 610 F.2d 471, 475-76 (7th Cir. 1979); *see also Storm*, 328 F.3d at 947 (determining that *inter vivos* trusts are often will substitutes). Additionally, the probate exception often does not apply in actions seeking damages for breach of fiduciary duty in relation to testamentary instruments. *See, e.g.*, *Seay v. Dodge*, No. 95 C 3643, 1995 WL 557361 (N.D. Ill. 1995) (denying the probate exception in case against testamentary trustee for breach of fiduciary

duty); *Hamilton*, 678 F.2d at 710 (asserting federal jurisdiction over the probate exception in suit for negligent management against an estate's trustees); *Georges*, 856 F.2d 971 (7th Cir. 1998) (probate exception does not apply to malpractice claims against testator's attorney).

Defendants rely on the holding in *Storm* to assert that Culver's breach of fiduciary duty claims are a disguise for an action that is essentially a "will contest," which federal courts have found to be in the probate exception. *See Storm*, 328 F.3d at 944-45. But, the *Storm* court justified the probate exception because the plaintiff's ultimate goal was the *invalidation* of the testamentary instrument, making the case a "will contest" disguised as an action in tort. *Id.* Here, by contrast, Culver neither challenges the validity of the Trust Instrument, nor seeks a form of relief which in practice would invalidate the Trust Instrument. The relief Culver seeks is within the terms of the document, bringing the claim for relief outside the probate exception to diversity jurisdiction.

*Abstention*

Defendants argue that if the Court finds the probate exception does not apply, the Court should exercise its ability to abstain from jurisdiction in this case. The party requesting that the court abstain from exercising jurisdiction has the burden to show that abstention is appropriate. *Illinois Public Interest Research Group v. PMC, Inc.*, 835 F. Supp. 1070, 1077 (N.D. Ill. 1993). Federal courts may exercise their discretion to abstain from a case that has probate interests if those interests are "intertwined with state court proceedings," even if the federal suit may not interfere directly with a state probate proceeding. *Rice*, 610 F.2d at 477-78.

It is a general principal of our court system that the plaintiff may choose his or her forum. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Courts generally abstain in probate-related matters where a state case is ongoing, or where a state case has concluded but the state court

already has familiarity with the issues. *See Seay*, 1995 WL 557361 at *6-8 (explaining the relationship between the abstention doctrine and the probate exception). In this case, the Court does not believe that abstention would be appropriate. There is no ongoing state court case involving these issues. The state probate proceedings in this matter have been closed for nearly seven years. If returned to state court, the case will go before the chancery division, not before the probate division that heard the original probate proceeding. The federal court is no less equipped to deal with the issues alleged by Culver than the state court to which the case would transfer. Therefore, the Court will not abstain from exercising federal jurisdiction.

In conclusion, while the Court respects Defendants' concerns that the Trust Instrument may contain ambiguous language requiring the introduction of extrinsic evidence of Mr. Lowenstine's intent, this possibility alone is not enough to require the Court to decline jurisdiction. "The Complaint presents a number of claims essentially alleging breach of fiduciary duty. Determining the facts in this case may be difficult, but the legal questions seem no more complex or unfamiliar than questions involving the obligations of fiduciaries faced by the federal courts in a variety of contexts." *Seay*, 1995 WL 557361 at *5, *quoting Barnes v. Brandrup*, 506 F. Supp. 396, 404 (S.D.N.Y. 1981). Making all inferences in favor of the plaintiff, Culver has pled facts sufficient to support a finding that the Court has federal jurisdiction in diversity to hear the Complaint.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: March 9, 2006

9